WEST LUMBER CO. v. HUNT.   (No. 520.)

(Court of Civil Appeals of Texas.   Beaumont.
Jan. 17 and 30, 1920.   Rehearing Denied
Feb. 11, 1920.)

1. TRIAL ☞350(5)—SPECIAL ISSUE AS TO NEGLIGENCE OF PLAINTIFF IN ACTION FOR DEATH IMPROPERLY REFUSED.

In an action by a master mechanic in charge of tramroad engines for death of his son on an engine with defective axles, the trial court at employer's request should have submitted a special issue whether the death was or was not proximately caused by plaintiff's own negligence.

2. TRIAL ☞351(2)—REQUEST FOR SUBMISSION OF SPECIAL ISSUE SUFFICIENT TO CALL ATTENTION TO ISSUE AND NECESSITATE CORRECTION.

In action against company by its master mechanic for death of his son on a defective tramroad engine, defendant company's request for submission of issue whether death was proximately caused by plaintiff's own negligence held sufficient to call attention to issue defendant was seeking to have submitted, so that, pleading and evidence justifying submission, it became duty of court either to submit it properly in his own charge or to reframe issue as requested, if erroneous, and then submit it.

3. TRIAL ☞352(4)—PLEA OF CONTRIBUTORY NEGLIGENCE NECESSARY TO JUSTIFY SUBMISSION OF ISSUE.

In an action by a father for death of his son against the latter's employer, in the absence of plea of contributory negligence, there was no basis for submission of the issue.

4. TRIAL ☞350(5)—IMPROPER SUBMISSION OF CONTRIBUTORY NEGLIGENCE IN ACTION FOR DEATH DID NOT DEFEAT RIGHT TO HAVE ISSUE OF PLAINTIFF'S NEGLIGENCE SUBMITTED.

In action against company by its master mechanic for death of his son on a defective engine, unauthorized or improper submission of issue of son's contributory negligence in absence of plea, its existence being negatived by jury's answer, did not deprive defendant lumber company of its right to have submitted vital defensive issue as to whether plaintiff's own negligence was proximate cause of son's death.

5. DEATH ☞86(1) — COMPENSATION FOR CHILD'S DEATH DEFINED.

Under the common law, a father could recover for the death of his son the value of the son's services during minority, and, under the statute, is also entitled to recover the value of such contributions or pecuniary aid as he had reasonable expectation of receiving from the son after majority.

6. DEATH ☞77—FINDING OF DAMAGES MUST BE BASED ON EVIDENCE.

The amount of a father's recovery for death of his minor son must be based upon evidence before the jury, and cannot properly be left to their determination on surmise or speculation.

7. DEATH ☞99(3)—$5,000 AWARD TO FATHER FOR DEATH OF SON PRACTICALLY OF AGE HELD EXCESSIVE.

Verdict for $5,000 in favor of a father for the death of his son, 20 years and 10 months of age, held excessive as based only on evidence that an affectionate relation of father and son existed, and that the son was considerate of and obedient to his father, and considerate of his brothers and sisters.

8. TRIAL ☞125(1)—STATEMENT OF COUNSEL THAT EMPLOYER'S LOCOMOTIVE WAS DEATH TRAP IMPROPER.

In an action against a lumber company by its master mechanic for death of his son on a defective tramroad locomotive, argument of plaintiff's counsel that any company which would have a death trap like that (the locomotive) to coin dollars with ought to have to confess negligence held improper, and not to be repeated on new trial.

Error from District Court, Liberty County;   J. Llewellyn, Judge.

Action by A. L. Hunt against the West Lumber Company.   To review judgment for plaintiff, defendant brings error.   Reversed and remanded.

Huggins & Kayser, of Houston, for plaintiff in error.

E. B. Pickett, Jr., and C. H. Cain, both of Liberty, for defendant in error.

BROOKE, J.   Plaintiff's petition alleged that the death of his son was proximately caused by the negligence of defendant in these respects, to wit:

(1) That the engine was dangerous and unsafe because not equipped with pony trucks; (2) because neither said engine nor any of the cars "were equipped with any brake system whatever to assist or aid the engineer in bringing the engine or its train to a stop"; (3) because the drive axles "were crooked and bent in such a way as to throw said driving wheels out of balance, and thus prevent them from following the rail in a free and unobstructed manner"; (4) because defendant was negligent "in failing to use ordinary and reasonable care to keep said engine in a state of repair and in condition to be operated with safety, and in causing the said engine to be attached to a heavily loaded train of cars loaded with logs as aforesaid, without any brakes on said engine or any of said cars to enable it to handle said train safely upon and down the grades on said tramroad."

And in paragraph 5 of his petition the plaintiff alleged that—

The tramroad upon which the engine was being operated when his son Earnest Lee Hunt was killed, "extends over hills and into valleys, which makes and causes high grades; and that when going down one of said grades at a point upon said road the said engineer was unable to control the speed of said engine, because (a) said engine was not heavy enough to safely handle and hold back the great weight of said 14 carloads of logs, as they proceeded to gain speed down said grade; (b) because said engine or any of said cars were not equipped in any manner with brakes that could or would in any manner aid the said engineer in checking the speed of said train down said grade; and that because of the defects of said engine, as above set out and explained, same could not and did

not stay upon said track at a high rate of speed, and because thereof jumped the track and turned over, or was wrecked, as above stated, with the result that the said Earnest Lee Hunt was then and there killed in said wreck."

The defendant, plaintiff in error, by its first amended answer pleaded a general denial, and, for special answer first alleged that the accident which resulted in the death of the deceased was due to and proximately caused by the failure on the part of deceased to exercise ordinary care for his own safety. Next said answer alleged that—

"The plaintiff herein was the master mechanic in charge of the engines and their equipment and the crews of said engines at the time of the accident herein complained of, and that it was his duty to see that said engines were in proper condition and that said engines were in the proper state of repair; and defendant avers that, if said engine was not in proper state of repair or in proper condition to be operated upon the rails, the same was due to the negligence of plaintiff and his failure to perform his duty, and that for this reason the plaintiff is not entitled to recover herein."

Said answer further alleged that—

The defects in said engine were fully known to plaintiff, and that defendant had instructed him "not to permit the said Earnest Lee Hunt to go out on the engines; but the said plaintiff herein, without the consent of this defendant and against the instructions of this defendant, sent the said Earnest Lee Hunt out on said engine on the occasion in question, and defendant avers that said act was not the act of this defendant, but was the act of plaintiff, and that for such reason this defendant is not liable and plaintiff is not entitled to recover."

The prayer was for actual damages in the sum of $10,000 and exemplary damages in that amount. The case was submitted to a jury upon the following special issues, to wit:

"Gentlemen of the jury: This case will be submitted to you on special issues. By this is meant I will hereinafter propound to you certain questions which you will answer as you may find the facts to be from the evidence. A separate piece of paper will be furnished you on which you will answer as directed the questions hereinafter propounded. When you have answered these questions as directed, your foreman will sign the same and such answers will constitute your verdict in this case.

"For your guidance in answering the questions hereinafter propounded, I submit to you the following instructions:

"By the term 'negligence' as used herein means a failure to use that degree of care which would be exercised by a person of ordinary prudence under the same or similar circumstances.

"'Contributory negligence' in law means such an act or omission on the part of the person injured amounting to a want of ordinary care as, concurring or co-operating with some negligent act or omission of the defendant, proximately causes or contributes to cause the injury complained of.

"'Proximate cause' in law means that which in natural and continuous sequence, unbroken by any new independent cause, produces the event and without which the event would not have happened.

"Keeping in mind the above and foregoing instructions, I now propound to you:

"Question No. 1. Was the defendant, the West Lumber Company, guilty of negligence in any of the particulars charged in plaintiff's petition in regard to the engine on which plaintiff's son was killed? Answer 'Yes' or 'No.'

"Question No. 2. Was such negligence, if any, inquired about in question No. 1, the proximate cause of the death of plaintiff's said son? Answer 'Yes' or 'No.'

"Question No. 3. Was the defective condition of engine No. 1, if it was defective, the result of contributory negligence on the part of the plaintiff, A. L. Hunt? Answer 'Yes' or 'No.'

"Question No. 4. What sum of money, if any, paid now, will fairly and justly compensate plaintiff for the loss of the pecuniary aid, if any, he had the reasonable expectation of receiving from his said son had he lived? Answer stating what amount, if any. In answering this question you will not consider any mental anguish, pain, suffering, or grief occasioned plaintiff as the result of the death of his said son.

"The burden of proof is upon the plaintiff to establish the material allegations in his petition upon which he relies for a recovery by a preponderance of the evidence. By the term 'preponderance of the evidence' is meant the greater weight of credible testimony.

"You are the exclusive judges of the facts proved and the credibility of the witnesses."

Upon the verdict being returned, the court below rendered judgment in favor of defendant in error for actual damages in the sum of $5,000. Plaintiff in error seasonably filed its motion for new trial, which was by the court overruled, to which plaintiff in error duly excepted and in due time filed its bond, applied for writ of error, and the cause is now properly before this court for revision and correction of errors.

Plaintiff in error's seventh, eighth, ninth, and tenth assignments of error are as follows:

(a) "The court erred in failing and refusing to give in charge to the jury special issue No. 5 submitted by the defendant, because the same was raised by the evidence, and the defendant was entitled to have a finding thereon."

(b) "The court erred in failing and refusing to give in charge to the jury special issue No. 5 submitted by the defendant, because the pleadings of defendant and the evidence in the cause raised the issue as to whether the happening which is alleged by plaintiff to have resulted in the death of his son was the negligent act of plaintiff himself."

(c) "The court erred in failing and refusing to submit to the jury special issue No. 5 requested by the defendant, because the pleadings and the evidence raised the issue that the defective condition of the engine, as alleged by plaintiff, was

due to the negligence of plaintiff with respect thereto, and defendant was entitled to have a finding upon said issue."

(d) "The court erred in refusing to give in charge to the jury special issue No. 5 submitted by defendant, because defendant had alleged that the defective condition of the locomotive upon which the son of plaintiff is alleged by plaintiff to have been killed was chargeable to plaintiff, who was responsible therefor, and the evidence shows that one of the defective conditions of said locomotive alleged by plaintiff, to wit, that the drive axles, that is, the axles underneath the engine, were crooked and bent, and the evidence showed that plaintiff had charge of and was responsible for the repair thereof, and the same had been bent for some time before the happening in which the son of plaintiff is alleged to have lost his life, and the same might have been repaired by plaintiff at any time within a day or two, and defendant was entitled to have said special issue with respect thereto determined by the jury, and the failure to submit said special issue was highly prejudicial to the rights of the defendant."

The special issue No. 5 was as follows:

"Gentlemen of the jury: At the request of the defendant the following special issue is submitted to you, to wit:

"Was or was not the death of the son of plaintiff proximately caused by the negligence of the plaintiff? You will answer the foregoing interrogatory 'it was' or 'it was not,' according as you find the fact to be."

The foregoing assignments will be considered together. In our opinion the court erred in refusing to give this special requested charge to the jury, and we sustain the assignments with reference to this matter.

The eighteenth, nineteenth, twentieth, and twenty-first assignments of error complain of the court's refusal to give in charge to the jury defendant's requested special issue No. 8, which is as follows:

"At the request of the defendant, the following special issue is submitted to you, to wit:

"Question No. 1. What amount did that son of plaintiff, who is alleged in plaintiff's petition to have been killed, earn per month? ——

"You will fill in the above blank with the sum which you so find."

Under the above assignments plaintiff in error advances the proposition that the measure of damages to the father for injuries resulting in the death of his minor child is the net earnings of the child over and above the amount required for the child's support, and plaintiff in error was entitled to have the basis for ascertaining this found and determined by the jury, if defendant in error is permitted to recover against plaintiff in error in the premises.

The son of defendant in error was, at the time of his death, a minor. There is no evidence in the record bearing upon the measure of damages except the testimony of defendant in error. All of his testimony upon the subject is set forth in the statement sub-joined to the proposition advanced under the twenty-first, twenty-second and twenty-third assignments of error. The only reference made by the court below to the measure of damages is as follows:

"Question No. 4. What sum of money, if any, paid now, will fairly and justly compensate plaintiff for the loss of the pecuniary aid, if any, he had the reasonable expectation of receiving from his said son, had he lived? Answer stating what amount, if any. In answering this question you will not consider any mental anguish, pain, suffering, or grief occasioned plaintiff as the result of the death of his said son."

The refusal of the court to give this charge was error. With reference to this matter the plaintiff testified:

"My son Earnest L. Hunt, the young man who was killed in that wreck, was living, you might say, with me at the time he was killed. We were boarding though at that time. He was not a married man, he was with me at the time. He had been down to Milvid at work something like 30 days. I think the wages he was earning was $2.25 or $2.50, as well as I remember. I forget now just which. He had been living back near Palestine, on the Trinity river, at a place called Oakwood, in Leon county, just before he came to Milvid. Before he came to Milvid to go to work and before I came to Milvid to go to work, he had been living with me, practically all his life. He had never went away from home to a sawmill to work, or to other jobs, unless I was with him. Both go to work at the same place, except this one time. This was the only time that I had ever gone away and left him in the last four or five years. At that time I left home first. He was helping to take care of my family at that time by taking care of his two little brothers. The next one was at that time, I believe, 14; as well as I remember at that time 14; and the other one 17, I believe; 16 or 17. They were my children. During the time that he was left at home back in Leon county with them, I had come to Orange and from Orange to Milvid, accepting the position that had been offered to me. I was out of work at that time, looking for work. During that time I looked to the efforts of my son E. Lee Hunt, and he did in fact take care of my minor children. After I got my job and sent for him to come to Milvid, he brought my children there. After my two minor children and my son Earnest Lee got there, we all boarded at the same place and lived at the same place. I paid the board, I think, for all of us, as well as I remember. In regards to the way he helped in the general sustenance of the family, why he always turned in every dollar that he had; he put it in as a part of the family fund; it was his; it was mine; it belonged to any member of the family that stood in need of any money, regardless of what his need was; if it was there, it was his. During the time we lived there at Milvid I think he did contribute towards buying any of my children's clothes and other necessities; I can't say—he had only been working—that is, under the customary rule, I don't know whether he had drawn a pay day or not; not more than one, if he ever drawn that; and I am not sure that he ever drawn that, because

they held them back 30 days before they ever drawn any money. * * * We were kind of companions, and in a manner kept our things together, our money together. At the time I drew every cent was subject to whatever the boy required and everything he drew was subject to what I required, subject to any necessity of the moment, regardless of whose it was. And the money that was required to maintain the children, just what he made was applied to it, and what I made was applied to it, just as was more convenient at the time. * * * I worked all the time I was there. I put in the time more regularly than the boy did as a rule. As a rule, he kept house sometimes and helped about the place. As well as I remember, I paid the board for the whole family, including the boy, at the place where I boarded. I can't just say positively about that, but as well as I remember; I know my part of the bill; I couldn't remember it in dollars and cents, but it seemed to be the biggest balance of my cash. In other words, it took more money to pay my board than anything else. The board bill amounted to more than I had left, in other words. * * * I had taken some pride, more or less, in the fact that I had learned a skilled trade and was able to take care of my family; well, I claim very little credit in that respect as a mechanic. I always been able to support my own family, as a rule. There is no reason why, if I keep my health, I will not always be able to do that; as long as I keep my health or my ability or my reasoning. * * * I told Mr. Granbury that what the boy earned was his own, if he claimed it; but he had never claimed it; he left it with the family. I think I told Mr. Granbury in that conversation that I had always been able to support my own family and had always done it wholly by my own efforts, and that I always expected in the future to be able to do that; most every man does. * * * I disremember whether I told the hotel man that he must collect from the boy for his own board or not. I cannot say that I told the man with whom we boarded that the boy was his own man now, working for himself, and must pay his own board, and he, the boarding house man must collect his own board, or not; if I said such I don't remember. If I said it, I suppose I meant it; it was true."

The issue as to whether or not the deceased son of defendant in error had contributed any amount to his support was one of the sharply contested issues of fact throughout the trial. The only testimony bearing on the issue was that of defendant in error. All of his testimony on the subject is set out.

Special issue No. 11 requested by defendant below and refused by the court was as follows:

"The following special issue is submitted to you, to wit:

"Did the death of plaintiff's son result in pecuniary loss to plaintiff?

"You will answer the foregoing question 'Yes' or 'No,' as you find the fact to be."

Also special issue No. 12 requested by defendant below and refused by the court was as follows:

"The following special issue is submitted to you, to wit:

"Question No. 1. Was plaintiff financially benefited by his son up to or at the time of the death of his said son?

"Question No. 2. Would plaintiff have been pecuniarily aided by his son up to the time his son would have reached his majority?

"Answer each of the above questions 'Yes' or 'No,' as you may find the facts to be."

These matters should have been submitted by the court and the jury should have been permitted to answer them, and the action of the court in refusing to submit same to the jury was error.

The thirty-third, thirty-fourth, thirty-fifth, and thirty-sixth assignments complain of the remarks made by E. B. Pickett, Jr., of counsel for plaintiff, in his argument to the jury, to the effect that "Any company who would have a death trap like that (meaning the alleged defective locomotive upon which the occurrence happened in which the son of plaintiff lost his life) to coin dollars with ought to have to confess negligence," and upon objection being taken thereto by counsel for defendant, in continuing his remarks to the effect "Yes, and I expect to have more for you to except to"; and also complain of the error of the court in refusing to instruct the jury not to consider the improper remarks of counsel for plaintiff, E. B. Pickett, Jr., in argument to the jury above mentioned, and in refusing to give in charge to the jury special charge No. 14 submitted by defendant, as follows:

"You are instructed that the remarks of counsel to the effect that 'Any company who would have a death trap like that to coin dollars with ought to have to confess negligence,' and after objection and exception thereto the remarks of counsel to the effect 'Yes, and I expect to have some more for you to except to,' were improper remarks, and you will not consider same."

The occurrence which forms the basis of these assignments is set forth in bill of exceptions No. 4 submitted by plaintiff in error, the pertinent part of which is as follows:

"E. B. Pickett, Jr., of counsel for plaintiff, while engaged in his closing argument to the jury on the merits of the cause, made, in effect, the following statement, to wit: 'Any company which would have a death trap like that (meaning the locomotive of defendant upon which the alleged injury occurred) to coin dollars with ought to have to confess negligence.' Objection was made to said statement by counsel for the defendant and exception was duly taken thereto by defendant, whereupon the said counsel for plaintiff continued his argument to the jury with the following statement, to wit; 'Yes, and if you object to my discussing the facts which show negligence, then no doubt there will be more of my argument for you to except to, because the record is so full of facts which undoubtedly show negligence on the part of defendant,' to

which last named statement and remarks of counsel for plaintiff in said'argument defendant objected and made due exception, and counsel for defendant thereupon submitted to the court a special charge (the same being special charge No. 14 on file in the cause) instructing the jury to disregard said remarks, which special charge was by the court refused. To which action of the court in declining to sustain objection thereto, and in declining to instruct the jury not to consider or regard the same, defendant has made due exception, and here now tenders this, its bill of exception, and asks that the same be approved and ordered filed as a part of the record in this cause."

Immediately upon said improper remarks being made, counsel for plaintiff in error in a proper manner, in open court, excepted and then and there preserved their bill of exceptions, and immediately submitted to the court their special charge No. 14 above copied. This special charge was refused.

Upon meager evidence supplied by the testimony of defendant in error alone, and tending to show that the deceased son of defendant in error was and would be an expense to him rather than a pecuniary aid, the jury found such meager issues as were submitted to them all against plaintiff in error, and assessed damages against plaintiff in error and in favor of defendant in error in the sum of $5,000.

The remarks of counsel complained of were highly improper and aggravating, and should have been withdrawn from the jury's consideration by the court. Such language was calculated to prejudice the rights of defendant and to inflame the minds of the jury, and when attention was called thereto the jury should have been admonished by the court that same should not be considered and ought not to be considered in passing upon the measure of damages in this case. Too much care cannot be required in order that counsel in a case like this should not inflame the minds of the jury, because this court cannot know the peculiar effect which undoubtedly resulted in this case in assessing $5,000 damages. We make peculiar mention, as we have heretofore made with reference to remarks of counsel, in order that the trials in the courts below may be absolutely free from any improper motive; and when the jury has assessed a damage which has a tendency to show an inflamed mind, which might or might not arise from an improper motive, it is impossible for us to know what impelled the jury to do this.

But the language used by the said E. B. Pickett, Jr., and the assessment by the jury of damages in such large sum, impresses our minds with the suspicion that the remarks of counsel brought this about. It certainly had a tendency to do so.

For the errors above pointed out, this cause is reversed and remanded to the lower court for a new trial.

HIGHTOWER, C. J., and WALKER, J. After submission of this cause in this court, its assignment for the preparation of the opinion fell to Associate Justice BROOKE, and he has prepared a written opinion, in which the conclusion is reached that the judgment of the trial court should be reversed and the cause remanded on several different grounds, the mention of which specifically is unnecessary here, but will be found in the opinion as prepared by Justice BROOKE.

[1] We have carefully considered the opinion as prepared by Justice BROOKE, and have reached the conclusion with him that the judgment of the trial court should be reversed and the cause remanded, but not upon all the grounds upon which Justice BROOKE has placed the reversal. We agree that the seventh, eighth, ninth, and tenth assignments of error found in the brief of the plaintiff in error, all of which complain in different form and language of the action of the trial court in refusing to submit special issue No. 5 requested by plaintiff in error, should be sustained. These several assignments of error are clearly shown in the opinion prepared by Justice BROOKE, and there is no necessity for further elucidating them here.

Special issue No. 5, which the court refused to submit, for the jury's answer, at the request of plaintiff in error, was as follows:

"Was or was not the death of the son of plaintiff proximately caused by the negligence of plaintiff? You will answer the foregoing interrogatory 'It was,' or 'It was not,' according as you find the fact to be."

In the opinion of Justice BROOKE it is clearly stated that the refusal of the trial court to submit this special issue was error for which the judgment should be reversed, but Justice BROOKE did not let his opinion reflect the reason for so concluding. As we understand the contention of the plaintiff in this case (defendant in error here), one of the main grounds of negligence relied upon for recovery against the defendant below was the fact, as alleged by the plaintiff, that the drive axles of the engine upon which plaintiff's son met his death "were crooked and bent in such a way as to throw said driving wheels out of balance, and thus prevent them from following the rail in a free and unobstructed manner." Of course, as shown by the opinion of Justice BROOKE, there were several other grounds of negligence charged in plaintiff's petition; but this we say was one of the main grounds of negligence alleged to be the proximate cause of the death of plaintiff's son. Now, defendant, after a general denial of all the grounds of negligence as contained in plaintiff's petition, specially alleged, substantially, that if the drive axles of the engine were bent and

crooked and out of repair, as alleged by the plaintiff, and if such condition of the axle was the proximate cause of plaintiff's son's injury and death, that then, substantially, such condition of the drive axles was the result of negligence on the part of plaintiff in this case, who was the master mechanic on defendant's yard, and whose duty it was to see that the axles on the engine, and for that matter it was his duty to see that the entire engine was kept in proper repair, and that, if he failed to do so, such negligent failure on his part resulted in the death of his son, and that he should not, therefore, be permitted to recover against defendant.

The court, as will be seen from the opinion prepared by Justice BROOKE, submitted to the jury in one question whether or not defendant was guilty of negligence in any respect, as alleged by the plaintiff, and the jury answered "Yes" to this general issue or question. Then the court, by the second question propounded to the jury, inquired whether or not such negligence, if any, was the proximate cause of the son's death, and to this general issue or question the jury answered "Yes." It will be seen from the issues submitted in the court's charge that he nowhere nor in any manner affirmatively submitted to the jury the question or issue whether the son's death was caused by negligence on the part of plaintiff himself, and the evidence, as we see it in the record, and as we hold, having raised such issue, it was the right of plaintiff in error to have such defensive issue affirmatively presented for the jury's consideration and decision, and since the court's main charge failed to so submit such issue, then it was plaintiff in error's privilege and legal right to prepare and request the court to submit such issue, which plaintiff in error did, and the request was refused by the court.

[2] Now, counsel for defendant in error, by a counter proposition contained in his brief, seeks to uphold the action of the trial court in so refusing to submit such requested issue, for the reason, as suggested by counsel, that the special issue No. 5 as framed assumed that defendant in error was guilty of negligence, and only left to the determination of the jury whether such assumed negligence became a proximate cause of the son's death. We have just above copied the requested issue now in question, and, without determining whether the criticism made of same by counsel for defendant in error be correct, we have concluded that the issue as framed and requested was certainly sufficient to call the trial court's attention to the issue that plaintiff in error was seeking to have submitted, and since the pleading and the evidence justified the submission of a properly framed issue on the point, it became the duty of the trial judge to either submit the issue properly in his own charge, or so reframe the issue as requested by plaintiff in error as to make it correct, and then submit it to the jury. This rule we understand to be correctly announced in the case of Olds Motor Works v. Churchill, 175 S. W. 787. From the opinion in that case we quote:

"When the court fails to charge on a material issue, and a special charge is requested, though incorrect, but sufficient to call the court's attention to the omission, the court should submit a proper instruction on that issue; and if proper exception is taken to such failure of the court, and * * * assignment be presented, both in the motion for new trial in the court below and in appellant's brief, he may successfully urge the error of omission in the appellate court. But when the court has submitted a correct general presentation of the issue, if either party desires a fuller charge on that issue, he must tender to the court a correct charge, and, upon a failure to do so, he cannot avail himself of the court's omission."

The principle announced in the quotation just above is clearly applicable here. See, also, Roberts v. Houston Motor Car Co., 188 S. W. 259; Brady v. McCuistion, 210 S. W. 815.

[3, 4] It is true the record in this case discloses the fact that the trial court submitted to the jury for its determination whether or not the defendant in error here was guilty of contributory negligence which proximately caused his son's death, and it is also true that the jury determined that issue in the negative. As we view the plaintiff in error's answer in this case, upon which the cause proceeded to trial, there was no plea of contributory negligence, and for that reason there was no basis for the submission of the issue of contributory negligence, as the defendant would not have been entitled to the submission of any such issue, in the absence of a plea of contributory negligence. But, however that may be, the unauthorized or improper submission of the issue of contributory negligence by the court, and its existence being negatived by the answer of the jury, could not, we think, have the effect to deprive the plaintiff in error of the right to have the vital defensive issue submitted as to whether the negligence of the plaintiff himself, without any negligence on the part of the defendant, was a proximate cause of his son's death. We therefore conclude that the error of the trial court in refusing to submit special issue No. 5, as above shown, was error for which the judgment should be reversed.

[5-7] We next pass to the assignment of error complaining that the verdict and judgment in favor of plaintiff below is excessive. The record shows, without dispute, that the plaintiff's son, at the time of his injury and death, was approximately 20 years and 10 months of age; in other words, that he would

have reached his majority in about 60 days from the date of his death. The record further shows that the deceased son did not have regularly any outside employment, but that when he was last employed, outside of duties performed in the household, he made from $2 to $2.50 per day; that he was a faithful and reliable boy in his father's family, and rendered valuable services in attending to matters pertaining to the household and taking care of other children younger than himself; but there is little testimony, if any, to indicate that his earnings in any capacity were largely in excess of the expense to his father of his maintenance. That he was an obedient, kind, and affectionate son is beyond question, however, and if any element of recovery could properly enter into this case, other than that of pecuniary loss to his father, we would hesitate to conclude that the verdict and judgment were excessive. Under the common law, the father would be entitled in this case to the value of the services of the deceased, whatever such value would have been, up to the time the son would have reached his majority, all of which would be a question for determination by the jury upon evidence adduced in that connection; and in addition to that, by reason of the statute of this state, the father would also be entitled to recover the value of such contributions or aid of a pecuniary nature as he had a reasonable expectation of receiving from the son after reaching his majority had he lived. But the amount of this element of recovery, however, would have to be arrived at and based upon evidence before the jury, and could not properly be left to their determination upon mere surmise or speculation. Now, as stated before, the boy would have reached his majority in approximately 60 days from the accident. At the time of his death, and at the time of the trial in this case, the proof shows that the father was a skilled mechanic between 45 and 47 years of age, and earning a good salary, in robust health and strength, and he testified that he had always made a proper support for his family, and was doing so at the time of the son's death, and that he had no reason to believe that he would be unable to continue to do so. The proof shows further, that the father has two other sons, aged approximately 14 and 17 years, respectively. There was no proof on the trial below showing or tending to show that the deceased had made any promise to consecrate himself to his father, or that he would support or contribute to the support of his father or family, after reaching his majority, and there is nothing in this record, other than the fact that the boy was a dutiful and obedient and affectionate son, to warrant a conclusion that the son would have continued to contribute anything to his father after reaching majority, and the verdict of the jury in favor of defendant in error for the sum of $5,000 must be based alone, we think, upon evidence to the effect that the relation of father and son existed, and that their relations were affectionate, and that the son was considerate of and obedient to the father, and considerate of his brothers and sisters. We say that these facts alone must constitute the basis for the jury's verdict in the sum of $5,000.

In the brief of counsel for defendant in error we have not been cited to a single case which, in our opinion, would be authority for upholding the amount of the verdict in this case. No useful purpose would be subserved by discussing them, for, as is usually the case, the excessiveness vel non of a verdict depends upon the facts in each particular case, and we think that none of the authorities relied upon for upholding this verdict are based upon facts similar to those in this record. We are not unmindful, however, that questions of this kind are necessarily addressed largely to the sound judgment and discretion of the jury, because in the very nature of things it would be impossible to establish by evidence with mathematical certainty what amount of money or contributions having a pecuniary value the parent, in cases of this character, would have a reasonable expectation of receiving from the child, had he lived, and yet we also know, as has been frequently determined by the appellate courts of this state, that the verdict of a jury on such issue must have a reasonable and substantial basis in the evidence, and that a jury cannot be permitted to speculate or merely surmise in determining such issue, and, as we view the record in this case, that is what the jury has done in reaching a verdict in favor of defendant in error for $5,000. We hold that the assignment challenging the verdict and judgment as being excessive ought to be sustained. But, since the judgment must be reversed and the cause remanded upon other grounds, as we have indicated, and in view of the probability of another trial, we deem it proper not to suggest the extent to which the verdict, in our opinion, is excessive upon the facts as they now appear in the record, and withhold any opinion that we may entertain at this time upon that point.

[8] We deem it not improper to say that we do not concur with Justice BROOKE in the conclusion reached by him that the remarks of counsel for defendant in error in his closing argument to the jury in this case would be sufficient of themselves to cause a reversal of this judgment, but we do agree that the remarks complained of, which are fully shown in the opinion prepared by Justice BROOKE, were hardly justified by anything shown in the record in this case, and that upon another trial such remarks or similar ones should not be made.

We have carefully considered all other assignments of error contained in the brief of plaintiff in error, and have concluded, without discussing them, that none of them point out anything prejudicial to the rights of plaintiff in error, and they are overruled.