## CANTU et al. v. SOUTHERN PAC. RY. CO. et al.

### No. 5454.

Court of Civil Appeals of Texas. Amarillo.

Nov. 9, 1942.

Rehearing Denied Dec. 21, 1942.

Lee R. Stroud, of Kaufman, for appellant.

Baker, Botts, Andrews & Wharton, of Houston, and Landman & Landman, of Athens, for appellees.

STOKES, Justice.

This action was instituted by appellant, Josephine Cantu, joined by her husband, Victor Cantu, to recover damages of appellees, Southern Pacific Railway Company, Texas Midland Railroad, and Texas and New Orleans Railroad Company, which she alleged were occasioned her by the death of Rodrigo Chaves, her son by a former marriage, which resulted from a collision at a grade crossing between a train of the Texas and New Orleans Railroad Company and an automobile in which the deceased was riding. Josephine and Victor were separated and no damages were claimed for him. The case will therefore be considered as that of Josephine alone. A jury was impaneled to try the case, but at the close of appellant's testimony, upon motion of appellees, the

court instructed the jury to return a verdict in their favor, and upon the return of the verdict, the court entered judgment dismissing the Southern Pacific Railway Company and Texas Midland Railroad, and in favor of the Texas and New Orleans Railroad Company, denying appellant any recovery. Appellant prosecuted an appeal to the Court of Civil Appeals of the Fifth District and the case was transferred to this court by the Supreme Court under an order equalizing the dockets of the Courts of Civil Appeals.

Appellant presents a number of assignments of error, but the controlling question in the case is whether, under the testimony, appellant was entitled to recover of any of the appellees. Error is assigned to the action of the court in dismissing the Southern Pacific Railway Company and Texas Midland Railroad, but, in view of the disposition that must be made of the appeal, that ruling of the court becomes immaterial and it will not be necessary further to consider it.

The record shows that Rodrigo Chaves was born March 5, 1925; that on July 23, 1927, appellant, under the name of Josephine Chaves, executed an instrument in which she stated that Blas L. Atilano and his wife, Ednardo, desired legally to adopt the child; that about June 1, 1926, when the child was little past one year of age, she and her husband, John Chaves, separated and both of them then agreed to commit the care and custody of the child to Atilano and his wife; that Atilano had conferred upon Rodrigo all of the rights and privileges, in law and in equity, of a legal heir, adopted him, and conferred upon him the name of Rodrigo Atilano. The instrument further provided that, in view of the adoption and in consideration of the fact that Atilano and his wife had looked after and cared for their son Rodrigo and conferred upon him the rights and privileges of a legal heir, she and her then husband, the child's father, confirmed their former agreement by which they had placed the custody of the child in Atilano and his wife, and transferred to them the custody of the child and all authority over him. The testimony further showed that Atilano and his wife, Ednardo, retained the custody of the child from June 1, 1926, until his death on July 24, 1936, and that no effort was ever made by appellant to regain his custody or in any manner avoid or rescind her action in committing the

custody of the child to the Atilanos. The boy remained with the Atilanos for ten years and, so far as the record shows, they extended to him all of the care and attention that would have been extended to him by his natural parents or that either of them could have extended to him in the circumstances in which all of the parties lived.

Appellant alleged and testified she had been informed that Blas Atilano had required her son to work more than he should; that he had failed to give the child a proper education; that he did not have an estate of real and personal property as he represented to her when the custody of the child was committed to him; and that he had deprived the child of the privilege of visiting with her, his natural mother. She said that on account of all of these things, some two years before the boy's death, she decided to file suit for the recovery of the custody of the boy, but that she could not do so because her financial circumstances were such that she was unable to employ an attorney. She said that if the boy had lived, she would have filed such a suit, recovered the custody of her son, and that he would have lived with her and contributed to her support during the balance of her natural life.

We think this is a sufficient statement of the case to reveal the circumstances under which appellant sought to recover damages for the boy's death. The record shows that, after the collision, the appellee, Texas and New Orleans Railroad Company, took charge of the body and paid all of the burial expenses, and it is indicated that it paid to Blas Atilano the sum of $750 in settlement of any claim he may have had against appellees by virtue of the collision and the boy's death.

The law is well settled in this State and in practically every other jurisdiction in this country that in an action by a parent for the death of a child, the measure of damages is the pecuniary value of the services the child would have rendered to its parent during minority and such additional services as the pleading and proof may show the parent had a reasonable expectation of receiving from him after he became of age. This was the basis of appellant's claim for damages against the appellees and, in order to recover, it was necessary for her to show by pleading and proof conditions under which she had a reasonable expectation of re-

ceiving services from the child that would be of a pecuniary value. The record indicates that, at the time appellant executed the instrument by which she committed the custody of her son to Blas Atilano and his wife, some kind of an instrument was also executed by the Atilanos by which they attempted to adopt the child under the provisions of the law as it existed at that time. The record before us contains no such an instrument, but a large portion of appellant's brief is devoted to an attack upon its validity. Under the circumstances revealed by the record, it is a matter of no consequence whether the child was legally adopted by the Atilanos or not. Appellant admitted that she and her husband, the child's father, committed the care, custody, and responsibility of rearing the child to the Atilanos when the child was little more than one year of age, and that the Atilanos retained such custody for ten years. Appellant and the child's father did this, no doubt, because they were separated and believed the child would have a better home with the Atilanos than it could have with appellant who had been awarded its custody in their divorce proceeding. Blas Atilano and his wife therefore stood in loco parentis after June 1, 1926, when the child was originally placed in their custody by its parents. They furnished the child a home and extended to it the nurture, care, and sustenance necessary for its proper existence and development, and whether they had legally adopted the child or not, they, with the consent of appellant, assumed and discharged all of the responsibilities of natural parents and were entitled to the benefit of its services, the same as its natural parents would have been. Schrimpf v. Settegast, 36 Tex. 296; Youngblood v. Hoeffle, Tex.Civ.App., 201 S.W. 1057; Saunders v. Alvido & Laserre, 52 Tex.Civ.App. 356, 113 S.W. 992; McDonald et al. v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 267 S.W. 1074; Duckworth v. Thompson et ux., Tex.Com. App., 37 S.W.2d 731.

■ Appellant alleged, testified, and contends here that if the boy had not been killed, she would have filed a suit against Blas Atilano and recovered the custody of her son and that after recovering such custody, he would have lived with her and contributed materially to her support. No such suit had been filed at the time the boy was killed, and appellant admits that her financial condition had theretofore been such that she had been unable to employ counsel to file such a suit. The only basis upon which the court could have rendered a judgment in favor of appellant would have been the assumptions (1) that she would have become financially able to employ counsel to file and prosecute a suit for the custody of her son; (2) that she would have filed and prosecuted such a suit; and (3) that she would have been successful and recovered a judgment, taking from the Atilanos the custody of the child and committing it to her. This would have been pyramiding assumption upon assumption, which the law will not indulge. It is not permissible to build, upon a conclusion that appellant would have become financially able to file and prosecute such a suit, the further conclusion that she would have done so, and, certainly, it would not comport with the rules of evidence to add yet another assumption that she would have prevailed in such a suit. International Travelers' Ass'n v. Bettis, 120 Tex. 67, 35 S.W.2d 1040; Stovall v. Martin et al., Tex.Civ. App., 210 S.W. 321; Wells v. Texas Pac. Coal & Oil Co. et al., Tex.Com.App., 164 S.W.2d 660.

■ Even if the law permitted such a combination of presumptions as the basis for a recovery, it is obvious that each of the presumptions which appellant sought to invoke here was of doubtful substance. Appellant made no showing whatever that her financial condition had changed or was likely to develop into a condition better than that which it had theretofore been. Neither would the court have been justified in assuming that she would have filed a suit for the recovery of her son. She had permitted the Atilanos to retain his custody for ten years and we find nothing in the record which indicates she had made any serious effort during all of that time to retrieve it. Moreover, the child having lived with the Atilanos practically all of its life, and they having given it a home and extended to it every advantage that was necessary for its proper development which, no doubt, resulted in the establishment of a sentimental relationship fully equal to that which ordinarily exists between parent and child, it is exceedingly doubtful that, under the circumstances which the record reveals concerning the financial condition of appellant, a court would have concluded the interests of the boy would be subserved by acceding

to appellant's demands and committing to her the custody of her son. Without such custody, appellant could have had no expectation whatever of receiving from him, during his minority, such services as would constitute the basis of a cause of action in a case of this kind, and, in order to recover for such services after the boy reached his majority, it was necessary both to plead and prove circumstances that would warrant the court in concluding they would likely have been extended to her after he had reached and passed the age of 21 years. There is nothing in the testimony that would warrant such a conclusion. Patterson v. Williams, Tex. Civ.App., 225 S.W. 89; West Lumber Co. v. Hunt, Tex.Civ.App., 219 S.W. 1106.

We have carefully considered all of the assignments of error, propositions, and contentions made by appellant and, in our opinion, the court below properly instructed the jury to return a verdict in favor of the appellees. There being no error revealed by the record, the judgment will be affirmed.