BROCKTON SAVINGS BANK *vs.* ISAAC SHAPIRO & others.

Suffolk. May 2, 3, 1949. — November 4, 1949.

Present: QUA, C.J., RONAN, SPALDING, & WILLIAMS, JJ.

*Mortgage*, Conveyance subject to mortgage. *Contract*, Assumption of mortgage. *Surety*.

At the trial of an action by a savings bank, payee of a note secured by a mortgage of real estate, against the maker for a deficiency remaining after a sale in foreclosure, an issue, whether one, to whom the maker had conveyed the mortgaged premises "subject to" the mortgage, had assumed and agreed with the maker to pay the note, properly was submitted to the jury where there was evidence, partly oral and partly in the form of admissions taken from records of the bank, which warranted a finding of such assumption and agreement.

At the trial of an action on a real estate mortgage note by the payee-mortgagee against the maker-mortgagor for a deficiency remaining after a sale in foreclosure of the mortgage, where the defendant contended that his rights as a surety, consequent upon his having conveyed the mortgaged premises to a grantee who had assumed and agreed with the defendant to pay the note, had been impaired by an extension agreement between the grantee and the plaintiff whereby the time for payment was extended, the grantee agreed to pay the principal on the extended date and not to require the plaintiff to receive payment before that date, and it was provided that nothing contained in the agreement should "be construed to impair the security of . . . [the plaintiff] . . . under said mortgage, nor affect, nor impair any rights or powers which . . . [the plaintiff] may have under the said note and mortgage for the recovery of the mortgage debt, with interest, in case of nonfulfillment of this agreement by" the grantee, the trial judge properly refused to regard such reservation of the plaintiff's rights as sufficient to prevent the defendant from being discharged from liability on the note by the agreement.

CONTRACT. Writ in the Municipal Court of the City of Boston dated April 5, 1939.

The action was removed to the Superior Court.

Following the decision reported in 311 Mass. 695, there was a second trial of the action before *Burns*, J.

A portion of the charge to the jury on the effect of an agreement of the defendants' grantees to assume and pay the mortgage debt, and of the agreement of extension between the plaintiff and those grantees, was as follows: "This deed to the Williamsons [the defendants' grantees] conveyed the equity of redemption, and its acceptance by them would not impose any personal liability on them whatever to pay this mortgage debt. Did they assume and agree to pay the debt, and if they did, that was what they agreed with the Shapiros [defendants] and not with the bank. Did the bank know about it, if it ever happened . . . did the bank thereafter look to the Williamsons as the principal debtor? If it did, then the defendants in this case became sureties for the Williamsons along with the property itself, and this relation of principal and surety between the defendants and the Williamsons, if it ever existed, arose out of the dealings between them, and not out of any arrangement between the bank and the William-

sons, and it was not created . . . by the giving of this extension.

"If the defendants were sureties they were sureties before any extension was considered at all or talked about, but if they were sureties [and there was] any change in the obligation that existed at the time they became such whereby the terms and the time of payment of the obligation on which they were originally liable were changed or made different by the extension . . . and their rights were in any wise prejudiced . . . they would be discharged from liability.

"So that . . . it would be a question for you to determine whether the rights of the defendants were harmed by this agreement.

"The extension was a valid and enforceable agreement between the bank and the grantees, and the bank could not terminate it before September 1, 1939. That is what the agreement of extension says. . . .

"It is not . . . true that this bank had no right to extend the mortgage without the consent of the defendants, but . . . if they did extend that mortgage without the consent of the defendants and the defendants were prejudiced thereby, that is . . . they were harmed by it in any rights that they would have if no extension had been made, did it change the situation as far as they are concerned? If it did, then they are discharged from liability."

*M. J. Zieman,* for the plaintiff.

*S. B. Stein,* for the defendants.

Qua, C.J. This is an action by the bank against the makers of a mortgage note, originally for $100,000, given by the defendants to the bank on March 15, 1926. On July 8, 1926, the mortgaged land was conveyed to Adam Williamson and Annie Williamson, hereinafter called the grantees, as tenants by the entirety by a quitclaim deed in which the premises "are conveyed subject to" the mortgage, but in which are no words whereby the grantees assume and agree to pay the mortgage. On April 15, 1937, while the note was overdue, an indenture entitled "Extension of

Mortgage" was executed between the bank and the grantees whereby the time for the payment of the principal of the mortgage note was extended for three years from September 1, 1936, and the grantees agreed to pay the mortgage debt at the expiration of that time and also agreed that they would not require the bank to receive payment before such expiration. This indenture included a provision that nothing contained in it should "be construed to impair the security of said Bank, its successors and assigns, under said mortgage, nor affect, nor impair any rights or powers which it may have under the said note and mortgage for the recovery of the mortgage debt, with interest, in case of nonfulfillment of this agreement by said Equity Owners." There is no contention that the defendants consented to this extension. On February 24, 1939, the bank foreclosed the mortgage under the power of sale contained therein, apparently for nonpayment of taxes and interest. After application of the proceeds of the sale to the unpaid balance' of the note there remained a deficit of $34,154.47 and interest thereon, to recover which this action is brought. This figure is not questioned. There was evidence that after the foreclosure the bank brought an action against the grantees to recover the deficit on their covenant contained in the indenture of extension to pay the mortgage debt, and that this action was settled by the grantees paying to the bank the sum of $5,500 in return for a "covenant not to sue" given by the bank to the grantees.

The case was here on a previous occasion after a verdict for the defendants. The plaintiff's exceptions were sustained. *Brockton Savings Bank* v. *Shapiro*, 311 Mass. 695. At the second trial there was again a verdict for the defendants. The plaintiff again excepts. The exceptions argued relate to the admission of evidence, to portions of the judge's charge, and to the refusal of requests for rulings made by the plaintiff. The exceptions are applicable to alternative situations of fact which may have been found by the jury, and as it is impossible to determine from the general verdict which alternative the jury accepted, it will be necessary to

deal with the substance of all the exceptions which have
been argued, although it will not be necessary to deal sepa-
rately with each request for ruling.

1. There was no error in leaving to the jury the question
whether the grantees not merely took subject to the mort-
gage, but assumed and agreed with the defendants to pay
it. It is true that the deed from the defendants to the
grantees contained only the statement that the premises
were conveyed "subject to" the mortgage, but while this
did not constitute an agreement to assume and pay the
mortgage as part of the purchase price, it was not incon-
sistent with the existence of such an agreement. *Drury* v.
*Tremont Improvement Co.* 13 Allen, 168. *Flynn* v. *Kenrick*,
285 Mass. 446. *McRae* v. *Pope*, 311 Mass. 500, 504–505.
A written contract of purchase and sale which preceded
the deed is equally inconclusive. There was evidence that
there was an agreement to assume and pay. This evidence
was partly oral and partly in the form of admissions taken
from records of the bank which were held to be competent
in the former opinion, 311 Mass. at page 698. See further
page 700. Indeed, it was held in the former opinion (page
698) that this issue as to the assumption of the mortgage
by the grantees was one for the jury. The second trial
brought about no such change in the posture of the case
as to call for a different conclusion. The former decision
covers the point.

2. There was no error in the refusal of the trial judge to
regard the reservation of the bank's rights contained in the
indenture of extension as sufficient to prevent the defendants
from being discharged by that indenture, if the defendants
had become true sureties by reason of an assumption of the
mortgage by the grantees, and the bank, as shown by its
admissions, had knowledge of that fact. We say "if the
defendants had become true sureties by reason of an assump-
tion of the mortgage note by the grantees" because the
pertinent exception is based upon that hypothesis, and we
are dealing with the exceptions in the form in which they
are presented to us. This subject was fully covered in the

former opinion, 311 Mass. at pages 702–704. It was there pointed out that the bank did not reserve all its rights against the sureties, and that its reservation of rights was conditioned upon the grantees not fulfilling the terms of the indenture of extension. If the grantees fulfilled those terms, the defendants could not, until the expiration of three years after September 1, 1936, pay the mortgage note themselves and also then enforce the mortgage against the grantees. During the same time the indenture of extension by its terms prevented the grantees from performing their contract with the defendants to pay the mortgage note. And even if the defendants could sue the grantees for not performing their contract, there was no means by which during the period of extension the defendants could avail themselves of the mortgage security. Their right of subrogation was therefore impaired. Restatement: Security, § 129. Williston on Contracts (Rev. ed.) §§ 339, 1225, 1230.

This case differs from *Hutchins* v. *Nichols*, 10 Cush. 299, upon which the bank relies. In that case the surety lost no rights under any mortgage, and it was held that the change in the obligation could not be detrimental to the surety.

3. The plaintiff has argued that the covenant on its part not to sue the grantees in return for a payment of $5,500 made by them to the plaintiff to settle the plaintiff's action against them on their covenant to pay the mortgage debt contained in the indenture of extension did not discharge the defendants. Whether the argument is sound need not be determined. See Williston on Contracts (Rev. ed.) § 339. The record discloses no ruling that the covenant not to sue did discharge the defendants. The defendants in an amendment to their answer did set up the defence that this payment and the covenant not to sue brought about their discharge, and they make the same argument before us. But the exceptions with which we are dealing are those of the plaintiff. It does not appear from the record that any request for ruling of the plaintiff specifically

directed to the point in question was made and refused. The requests to which we are now referred as bearing upon the point bear upon it only remotely and equivocally. Some of these were incorrect and to give the others would merely have been confusing. The judge nowhere told the jury that the payment of $5,500 for the covenant not to sue discharged the defendants. On the contrary he submitted the case to the jury and correctly instructed them that they should treat the $5,500 paid by the Williamsons for the covenant not to sue as if paid on account of the mortgage debt. If the defendants and also the grantees had become obligated to pay to the bank the same mortgage debt, the defendants because they were the makers of the note, and the grantees because they had covenanted to pay it in the indenture of extension, even if those in one group were not liable jointly with those in the other, the payment by the grantees in return for a covenant not to sue was, at least in the absence of clear proof of a contrary intention, a payment upon the note which enured to the benefit of the defendants. Williston on Contracts (Rev. ed.) § 341. Restatement: Contracts, § 120 (1). See *Kenworthy* v. *Sawyer*, 125 Mass. 28, 30; *New York Bank Note Co.* v. *Kidder Press Manuf. Co.* 192 Mass. 391, 406–407; *Matheson* v. *O'Kane*, 211 Mass. 91; *O'Neil* v. *National Oil Co.* 231 Mass. 20, 28–29; *Shapiro* v. *Lyon*, 254 Mass. 110, 117; *Arnold* v. *Jacobs*, 316 Mass. 81, 84; *Perry* v. *Oliver*, 317 Mass. 538. It follows that evidence was admissible to prove such payment and the giving of the covenant not to sue. *Anti* v. *Boston Elevated Railway*, 247 Mass. 1, 6.

We have not considered exceptions not argued. Neither have we considered argument not addressed to exceptions. Two appeals upon interlocutory matters have not been argued and are treated as waived.

The plaintiff insists that we are not bound by our own decision when this same case was here before (311 Mass. 695). In this instance it would be fruitless to consider whether our own former decision in the same case is binding

upon us by some more stringent rule than that of stare decisis under which we commonly regard ourselves as bound by decisions in different cases, since the present decision would be the same in any event. See *Wall* v. *Old Colony Trust Co.* 177 Mass. 275, 279; *Lunn & Sweet Co.* v. *Wolfman,* 268 Mass. 345, 349; *Blankenburg* v. *Commonwealth,* 272 Mass. 25, 28; *Cann* v. *Barry,* 298 Mass. 186, 187; *Peterson* v. *Hopson,* 306 Mass. 597, 602. We do not intend to cast any doubt upon the former opinion.

*Appeals waived.*

*Exceptions overruled.*