Selwyn CLARK, Plaintiff, Appellant,

v.

ZIMMER MANUFACTURING COMPANY, Defendant, Appellee.

No. 5804.

United States Court of Appeals First Circuit.

Heard May 3, 1961.

Decided June 13, 1961.

Christy A. Pano, Worcester, Mass., for appellant.

Leon F. Sargent, Boston, Mass., with whom Donald A. Macksey and Powers, Hall, Montgomery & Weston, Boston, Mass., were on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Massachusetts entered following the allowance of defendant's motion for summary judgment.

Plaintiff-appellant, Selwyn Clark, filed a declaration in the Superior Court of Worcester County in the Commonwealth of Massachusetts alleging that: On January 2, 1957 plaintiff suffered a compound fracture of the right femur. He was hospitalized and operated on in order to reduce the compound fracture. During the operation an intramedullary nail manufactured by defendant, Zimmer Manufacturing Company, was inserted within plaintiff's femur. On January 28, 1958 the intramedullary nail snapped or broke while within plaintiff's femur. Defendant implied and warranted that the nail was fitted for the known purpose for which it was to be used. Defendant was negligent and careless in the manufacture of the intramedullary nail, and the nail was improperly manufactured. Because defendant was so negligent and the nail was improperly manufactured plaintiff suffered severe permanent injury and various other damages.

Defendant, on the basis of diversity of citizenship of the parties, removed the action to the United States District Court and subsequently filed its answer. Defendant denied that an intramedullary nail manufactured by it was used in connection with the operation performed on plaintiff on or about January 2, 1957, and further denied each and every one of the plaintiff's other allegations. Defendant made further answer by setting up various defenses, among them the following: (1) The medical treatment alleged by plaintiff to have involved the use of an intramedullary nail manufactured by

defendant arose out of and was the result of injuries received by plaintiff in an automobile accident. Plaintiff made claim against Roland F. Couture for damages arising out of the personal injuries sustained by him as a result of the automobile accident. Three months following the alleged breaking of the intramedullary nail as alleged in plaintiff's declaration, plaintiff on April 18, 1958 by a written release for a good and valuable consideration discharged and released his claim and cause of action against Roland F. Couture. Wherefore plaintiff is barred from recovery as against the defendant for the injuries set forth in his declaration. (2) The plaintiff for the sum of $10,000 discharged and released his claim and cause of action against Roland F. Couture by a written release, a copy of which is attached and made a part of the answer. The release and compensation paid in settlement of the plaintiff's claim against Roland F. Couture for the sum of $10,000 covered all injuries, disabilities and damage from which the plaintiff was then suffering and had incurred at the time of the execution of the release, which included the injuries alleged in this action. Wherefore the release and settlement constituted a full and complete satisfaction of any claim by the plaintiff for damages sustained by him, including the injuries and damage alleged in the declaration in this action and, consequently, plaintiff is barred from recovery against this defendant.

The release in its pertinent part reads: "For And In Consideration Of the payment to me * * * of the sum of Ten Thousand and No/100ths Dollars * * * I * * * do * * * release, acquit and forever discharge Roland F. Couture and any and all other persons, firms and corporations of and from any and all actions, causes of action, claims or demands for damages, costs, loss of services, expenses, compensation, consequential damage or any other thing whatsoever on account of, or in any way growing out of, any and all known and unknown personal injuries and death and property damage resulting or to result from an occurrence or accident that happened on or about the second day of January, 1957, at or near Millbury, Massachusetts."

Defendant moved for summary judgment and in support thereof attached an affidavit of defendant's attorney referring to the provisions of the release. A copy of the release was also attached. In opposition to the motion, plaintiff's attorney filed his counteraffidavit which, in general, stated the facts concerning the release to be as set out in the answer of defendant, but which stated that plaintiff had no intention at that or any other time of releasing the present defendant from liability as a result of the defective condition of the nail and the breach of the implied warranty of fitness. The counteraffidavit further stated that plaintiff alleged that the act of the nail cracking, snapping or breaking is not the natural and probable consequence of the original injury, so that the release to Roland F. Couture would not be a bar; the original tortfeasor could not be expected to know or foresee that his act would cause the intramedullary nail to fracture. The counteraffidavit also alleged that there is a definite question of fact to be determined by the jury as to whether the breaking of the nail is and may be considered as a completely new injury.

Plaintiff's contentions in this appeal are similar: that the alleged negligence of the defendant had no causal relation to the original injury, but created a new and independent cause of action, liability for which was not barred by the release; or, at least, that the question of whether the fracture of the nail was a new injury was a question of material fact for a jury to determine.

Defendant, however, states the question differently. It contends that the question of proximate cause is immaterial, and that the release by its express terms, and its legal implication, precludes plaintiff from maintaining this action.

The parties apparently agree that the effect of the release is governed by Massachusetts law. We shall, therefore, examine the Massachusetts cases.

Although there are not too many Massachusetts cases on the point, we think that the cases sufficiently indicate that state's approach to the effect of releasing the original tortfeasor.[1] This approach is in the following terms: whether or not the original tortfeasor could have been liable for the subsequent injury because it is the natural and probable result of the original tortfeasor's negligence. See Purchase v. Seelye, 1918, 231 Mass. 434, 121 N.E. 413, 8 A.L.R. 503; Vatalaro v. Thomas, 1928, 262 Mass. 383, 160 N.E. 269. Cf. Annotation 1955, 40 A.L.R.2d 1075 for other approaches to the problem.

Defendant contends that, even under the Massachusetts view, the release bars this action against it, since it cannot be said as a matter of law that the original tortfeasor would not be liable for the subsequent nail fracture and accompanying damages, and the release in the contemplation of the law constitutes a discharge of doubtful claims also, i. e., even those as to which the released party may not, in fact, be liable. Purchase v. Seelye, supra, and Vatalaro v. Thomas, supra, seem to support this contention. In Purchase v. Seelye, the Supreme Judicial Court of Massachusetts reversed a verdict for a defendant surgeon who had mistakenly operated for hernia on the wrong side of the plaintiff's groin. The plaintiff had released his employer of all claims and demands "arising or which may arise out of" the rupture. The Court held that the release was no bar to the action against the surgeon and was not admissible in evidence since the "act of the defendant [surgeon] * * * was a wholly wrongful, independent and intervening cause for which the original wrongdoer was in no way responsible." The Court stated at 121 N.E. 414:

"The railroad company could not be held liable because of the defendant's mistaken belief that he was operating upon some person other than the plaintiff; such a mistake was not an act of negligence which *could be found* to flow legitimately as a natural and probable consequence of the original injury, and a *ruling in effect to the contrary could not properly have been made.* * * *

"If a surgeon employed to operate upon a patient for hernia caused by the negligence of another, instead of performing that operation removes one of the patient's kidneys (which is in sound condition) under the mistaken belief that he is treating another patient, *can it reasonably be held that such a mistake is something that might sometimes follow,* and as a matter of common knowledge and experience *might be expected sometimes to follow,* from an injury resulting in hernia? *We think not* * * * *."* (Emphasis ours.)

In Vatalaro v. Thomas, the Court upheld the direction of a verdict for a defendant surgeon in an action to recover damages alleged to be caused by an unskillful operation for hernia. The Court said:

"If we assume that the defendant in the case at bar, in performing the operation for hernia, stitched too tightly the spermatic cord, which was in the area of the hernia operation, it *could have been found* by the Industrial Accident Board that such lack of skill was an act of negligence which, it might reasonably have been anticipated, would flow as a natural and probable consequence of the original injury * * * *."* 160 N. E. at page 270. (Emphasis ours.)

In several cases cited in Purchase v. Seelye, supra, the Court said there is a requirement of some identity of the cause of action against the defendant with that against the released party. See e. g., Leddy v. Barney, 1885, 139 Mass.

---

1. The persons involved in this release situation will be referred to as (1) original tortfeasor, who is not a party to the instant type of case; (2) the injured party, the plaintiff in the case; and (3) the subsequent tortfeasor, whether he be physician, or another, and whether he only aggravates the original injury, or inflicts a new one.

394, 2 N.E. 107; Brewer v. Casey, 1907, 196 Mass. 384, 82 N.E. 45. This connection is satisfied, however, if something in the nature of a claim has been made on the released party and there is a possible liability under the rules of law for the damages sought against the defendant. Cormier v. Worcester Consol. St. Ry. Co., 1919, 234 Mass. 193, 125 N.E. 549. See also Pickwick v. McCauliff, 1906, 193 Mass. 70, 78 N.E. 730.

We believe that it cannot be said as a matter of law that the fracture of the nail was a completely new injury for which the original tortfeasor would be in no way responsible. See, e. g., Whalen v. City of Boston, 1939, 304 Mass. 126, 23 N.E.2d 93; Wilder v. General Motorcycle Sales Co., 1919, 232 Mass. 305, 122 N.E. 319; Hartnett v. Tripp, 1918, 231 Mass. 382, 121 N.E. 17. Under the Massachusetts law as we understand it, defendant was entitled to summary judgment in its favor.

Judgment will be entered affirming the judgment of the district court.