ANN SELBY *vs.* JOHN G. KUHNS.

Suffolk.    November 8, 1962. — March 20, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK,
SPIEGEL, & REARDON, JJ.

*Successive Tortfeasors.   Judgment.   Negligence,* Doctor.   *Evidence,* Relevancy and materiality, Presumptions and burden of proof.

The records of an action by a woman against the operator of an automobile for personal injuries sustained through its negligent operation, including an agreement for judgment for the plaintiff and judgment satisfied, were admissible in evidence at the trial of a subsequent action by the woman against a surgeon for malpractice in treatment of her injuries in order to show pro tanto reparation for the malpractice injury. [601, 602]

The operator of an automobile was liable for injury sustained by a woman from malpractice by a qualified surgeon in treatment of injuries sustained by her in an accident caused by negligent operation of the automobile although she did not herself select the surgeon but accepted him as in charge of her case when she went to a hospital for treatment. [602–603]

Discussion of the effect of receipt of compensation for personal injuries from a tortfeasor upon a claim for compensation for an aggravation of such injuries against a succeeding tortfeasor.    [603–607]

Satisfaction of an agreed judgment for the plaintiff in an action against the operator of an automobile for injuries arising out of its negligent operation did not as a matter of law fully discharge a claim or bar a subsequent action by the injured person against a surgeon for malpractice in his treatment of the injuries if the amount paid on the judgment was not full satisfaction in fact or intent of the malpractice claim. [607–608]

In an action against a surgeon for malpractice in treatment of injuries sustained by the plaintiff through a preceding tortfeasor's wrong, where the plaintiff had received a payment in settlement of the preceding tortfeasor's liability, the burden was on the plaintiff to establish what part of the payment received was not on account of the malpractice claim. [608]

TORT.    Writ in the Superior Court dated July 10, 1960.
The action was tried before *Swift,* J.

*Leon F. Sargent* for the defendant.

*James D. St. Clair (Jerome P. Facher* with him) for the plaintiff.

WHITTEMORE, J.   These are the defendant's exceptions in an action of tort, begun July 10, 1960, for the malpractice of a physician for unskilful treatment of the plaintiff's legs (broken in an automobile accident on June 29, 1958) so that they became deformed and bowed.   The plaintiff (her full name according to her testimony is Ann Sophie Selby) had a verdict for $40,000.

The defendant excepted to the exclusion of the Superior Court records of an action, begun July 31, 1958, against the operator and the owner of an automobile the negligent operation of which, on June 29, 1958, had injured Anne [*sic*] S. Selby, who brought the action by her father and next friend. The records showed an agreement for judgment for that plaintiff for $4,750 and judgment satisfied under date of September 10, 1959.   The defendant contends also that the excluded records require that judgment be entered for him.

On July 23, 1959, the plaintiff in the prior action, in sworn answers to interrogatories, stated in substance that she had received two fractured legs which did not heal properly and as a result she would be obliged to return to the hospital for a second operation; she had steel plates in her legs and was still limping badly; she had undergone an operation on June 29, 1958, by Dr. DePrizio; she had been in the hospital for eight weeks following the injury; she was in the hospital again for six weeks from October 12, 1958; she was visited at the hospital by Dr. Kuhnes [*sic*], a specialist; her financial loss was "Salary from June 29, 1958   approximately $864.00   Hospital   approximately $2465.00, Dr. DePrizio $600.00, Dr. Girourd   $700.00, Dr. Kuhnes, $70.00."

Dr. Carl J. DePrizio testified in the pending action that the plaintiff was in his care until August 17, 1958, when she was discharged from the hospital; he went to Europe in September; he saw her in the hospital after his return in October at which time he recognized that she was in Dr. Kuhns's hands and he assumed no responsibility and did nothing more in the case.   The plaintiff testified that she met Dr. Kuhns for the first time in the hospital on October 8, 1958 (having returned to the hospital on October 5).   She

"never said anything to the defendant by way of employing him as a doctor." Dr. Kuhns's testimony was, in substance, that he directed the plaintiff to walk before it was proper for her to do so, as it later turned out, in view of nonunion of the fractures. He advised the plaintiff in November, 1958, that "a second operation would be required to reset her legs." The plaintiff, subject to the defendant's exception, also testified that she visited Dr. DePrizio in August, 1959, at his office and that after examination he said that her legs were bowed "as a result of walking too soon on them."

1. The records of the earlier action were admissible.

Those records show that both actions arose out of the same automobile accident to the same plaintiff. The dates, the names of persons concerned, and the nature of the injuries established the necessary identity and, in the absence of an objection addressed specifically to that issue, a formal inquiry of the plaintiff or some other witness in respect thereof was not necessary. See *Luce* v. *Dexter,* 135 Mass. 23.

The records show an action against the earlier tortfeasors who were liable for the same malpractice injury, evidence of that injury in the first action, and a satisfied judgment which discharged all the liability of those tortfeasors. *Sacchetti* v. *Springer,* 303 Mass. 480, 481.

Although, as we hold below, that judgment did not discharge the cause of action for malpractice, the proceedings were admissible to show pro tanto reparation for the malpractice injury. See point 3.

The plaintiff contends that the first tortfeasors were not liable for the malpractice injuries. We disagree. "Lack of skill on the part of a physician . . . [wisely selected] rationally may be attributed to the original tort of the defendant." *Gray* v. *Boston Elev. Ry.* 215 Mass. 143, 147–148. *Sacchetti* v. *Springer,* 303 Mass. 480, 481, and cases cited. The circumstance that the plaintiff did not herself select the defendant as her physician but accepted him as the one who took charge when she returned to the hospital

does not show lack of due care on her part. There was evidence that the defendant is a well trained and qualified surgeon and a teacher at Harvard and Boston University medical schools, with membership in national societies. There is nothing to suggest that the unfortunate outcome of the treatment resulted from the advice of an unqualified physician.

The case of *Purchase* v. *Seelye,* 231 Mass. 434, 437, relied upon by the plaintiff in this aspect of her case, is distinguishable. There it was held that an injured railroad employee might recover against the physician (who, mistaking him for another patient, had operated on his left side rather than on the right) notwithstanding a prior release to the railroad of all claims and demands arising out of the injury to the right groin for which the operation was required. The mistake in identity was held not to be the natural, probable, and foreseeable result of the railroad's negligence. The physician's act was "a wholly wrongful, independent, and intervening cause for which the original wrongdoer was in no way responsible."

2. There is general support in our precedents, in decisions in "joint tort" cases elsewhere (166 A. L. R. 1099 et seq.), and in Restatement: Torts, §§ 879, 886, for the defendant's contention that the prior judgment is a bar, regardless of the adequacy of the reparation for the malpractice injury.

Several carefully reasoned decisions in malpractice cases in other jurisdictions, however, some quite recent, support a contrary rule, that is, settlement with the original tortfeasor, in the absence of full satisfaction in fact or intent, discharges the negligent physician only pro tanto. *Ash* v. *Mortensen,* 24 Cal. 2d 654, 658–659 (judgment against first tortfeasor satisfied in a reduced amount). *Couillard* v. *Charles T. Miller Hosp. Inc.* 253 Minn. 418, 426–428, following *Gronquist* v. *Olson,* 242 Minn. 119 (concurrent torts). *Daily* v. *Somberg,* 28 N. J. 372, 383–384, to be read with *Breen* v. *Peck,* 28 N. J. 351 (concurrent torts). *Derby* v. *Prewitt,* 12 N. Y. 2d 100, 106 ("[N]o one suggests that a

release of the doctor would completely discharge the origi-
nal wrongdoer"). Accord, *Wheat* v. *Carter,* 79 N. H. 150
(1919). See *Bolick* v. *Gallagher,* 268 Wis. 421, 427 ; *Triesch-
man* v. *Eaton,* 224 Md. 111, 118 (partially satisfied judg-
ment) ; *Burkhardt* v. *Armour & Co.* 115 Conn. 249 (special
provision in a judgment). See also the leading case of
*McKenna* v. *Austin,* 134 F. 2d 659, 664–665 (Ct. App. D. C.)
(concurrent torts) which stresses the injustice of the anom-
alous rule. Illustrative of cases contra is *Wells* v. *Gould,*
131 Maine, 192 (1932) (satisfied judgment).

The decisions in the District of Columbia, Minnesota,
New York, and New Jersey overrule prior cases. Although,
except as noted, these malpractice cases deal with the effect
of a prior release we see no basis for a more stringent rule
in this case. See point 3, *post.*

The unsoundness of the doctrine of unity of discharge
regardless of intent and satisfaction in fact, has been ably
and forcefully stated by the commentators for a long time.
Harper & James, Torts, § 10.1, pp. 711–714. Prosser, Torts
(2d ed.) § 46, pp. 243–246. 41 B. U. L. Rev. 577. Havig-
hurst, Settlements and Co-obligors, 45 Corn. L. Q. 1. Wig-
more, Release to One Joint-Tortfeasor, 17 Ill. L. Rev.
563. Notes, 22 Minn. L. Rev. 692. 33 Notre Dame Lawyer,
291. 37 Notre Dame Lawyer, 448. Prosser, Torts (2d ed.)
p. 244, concludes as to releases: "Even as applied to cases
of concerted action, the rule seems at best an antiquated
survival of an arbitrary common law procedural concept,
and it has no reasonable application to cases of mere con-
current negligence. The fear of double recovery is mean-
ingless, since the amount paid under the release must be
credited to the second tortfeasor in any case."

Dissatisfaction elsewhere with the rule of unity of dis-
charge has led to statutory modifications, to recognition of
oral agreements accompanying settlements, and to liberal
construction of releases as covenants not to sue. See Uni-
form Contribution Among Tortfeasors Act (1939, revised
1955) 9 U. L. A.; Prosser, Torts (2d ed.) § 46, pp. 244–245.
It may reasonably be thought to have led to the enactment

of St. 1962, c. 730, which by § 1 inserted a new G. L. c. 231B ("Contribution Among Joint Tortfeasors"), effective as to torts occurring on and after January 1, 1963.

The rule of unity of discharge of tortfeasors developed in cases where there had been a release of one wrongdoer. It was originally based in the mistaken view that, as in early cases of joint trespass, there was but a single cause of action. *Brown* v. *Cambridge,* 3 Allen, 474, 476 (concurrent torts, citing *Cocke* v. *Jennor,* Hob. 66 and Co. Litt. 232 a). *Stone* v. *Dickinson,* 5 Allen, 29, *S. C.* 7 Allen, 26 (a single arrest under several writs; "a single substantive cause of action"; a release under seal showed full satisfaction). Accord (cases of multiple liability for a single wrongful act), *Leddy* v. *Barney,* 139 Mass. 394; *Brewer* v. *Casey,* 196 Mass. 384; *Gold* v. *Boston Elev. Ry.* 244 Mass. 144, 147.

The inapplicability of the old rule to independent torts united only in their effect led to mention in later cases that there was only one injury and to the statement that "the damages sustained are . . . inseparable." *Muse* v. *DeVito,* 243 Mass. 384, 388–389. Some references to a single cause of action intend, we think, to refer to this merger of separate causes in their effect. See *Purchase* v. *Seelye,* 231 Mass. 434, 436.

That a prior release of the original tortfeasor would be a bar to a malpractice action was said in *Purchase* v. *Seelye,* 231 Mass. 434, 436, the stated ground being that there were two claims for one cause of action. The principle stated in that case was, without discussion, applied in *Vatalaro* v. *Thomas,* 262 Mass. 383, 387, in the holding that the receipt of benefits under the Workmen's Compensation Act (G. L. c. 152) for the original injury barred an action against a negligent attending physician. The decision depended upon the view of the majority that the injuries compensated included that caused by the physician. Accord, *McDonald* v. *Employers' Liab. Assur. Corp. Ltd.* 288 Mass. 170, 173–175. The opinions do not discuss the effect of an Industrial Accident Board order as a prior judgment.

The *Purchase* and *Vatalaro* cases were deemed by the United States Court of Appeals for the First Circuit in

*Clark* v. *Zimmer Mfg. Co.* 290 F. 2d 849, to require the ruling that a release of the original tortfeasor was a bar to an action against the manufacturer of an intramedullary nail, which was inserted in a fractured femur by the operating physician, and thereafter broke due to improper manufacture. See 41 B. U. L. Rev. 577, and 37 Notre Dame Lawyer 448.

In *Sacchetti* v. *Springer,* 303 Mass. 480, a malpractice case, the defendant showed a satisfied judgment in the amount of a jury verdict. He showed also that the specific aggravations caused by the alleged malpractice had been claimed in the first action; the instructions had included that then was "the only time that . . . [the plaintiff could ask] for compensation for injuries resulting from this particular set of facts"; there had been no instruction "that would prevent the jury from awarding damages for any aggravation of the injury caused by negligence of the present defendant. The jury knew that damages could be awarded up to $4,000. G. L. (Ter. Ed.) c. 84, § 15. They awarded $3,000." The court held: "The judgment against the city, which was satisfied, included in contemplation of law, as it doubtless did in fact, compensation for all the injuries for which the plaintiff now seeks to recover against the present defendant. . . . She has no right to be satisfied twice."

An examination of the citations in the *Sacchetti* opinion shows that the statement that the "judgment . . . included in . . . law . . . compensation for all the injuries" is founded in the concept that the single injury makes operative the rules applicable where there is only one cause of action and only one defendant. The care taken to show that there was satisfaction in fact tends, however, to suggest recognition that the stated rule of law might not be just in its application in all cases.

Other cases which hold the prior judgment a bar do not show successive torts. *Luce* v. *Dexter,* 135 Mass. 23, and *Leonard* v. *Lumbermens Mut. Cas. Co.* 298 Mass. 393, are cases of multiple liability for a single wrong. The court in the *Leonard* case noted that the second judgment was

against one whose liability was only derivative. In such a case, even a covenant not to sue given the person primarily liable is a defence to a later action. *Karcher* v. *Burbank,* 303 Mass. 303.

3. The absence of strong precedent, and our view that the rule of unity of discharge is, in reason, inapplicable to this case of successive tortfeasors, justify our holding accordingly.

Section 4[1] of c. 231B establishes for cases of prior release the rule long advocated by the commentators and heretofore in substantial part applied by this court in cases of covenants not to sue. See *O'Neil* v. *National Oil Co.* 231 Mass. 20, 28–29. The effect of this statutory rejection of the doctrine of unity of discharge in the large class of cases in which it has been chiefly applied discredits the doctrine generally and tends to support our refusal to apply it to a case in a related class which arose prior to January 1, 1963. See *Stone & Webster Engr. Corp.* v. *First Natl. Bank & Trust Co., ante,* 1, 7–8.

The rule that satisfaction of a prior judgment is a bar "is equitable in its nature . . . and its purpose is to prevent unjust enrichment." Prosser, Torts (2d ed.) p. 242. Where there is a single wrong by concerted tortfeasors or a single effect by concurrent tortfeasors there is a basis not here presented for limiting the plaintiff to one determination of full satisfaction. General Laws c. 231B (applying at least in its first three sections to "Contributions Among Joint Tortfeasors") states a rule for such cases or some of them.[2] There is nothing therein which our holding would

---

[1] "When a release or covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury: (a) It shall not discharge any of the other tortfeasors from liability for the injury unless its terms so provide; but it shall reduce the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and (b) It shall discharge the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor."

[2] General Laws c. 231B, § 1 (b), "The right of contribution shall exist only in favor of a joint tortfeasor, hereinafter called tortfeasor . . . ." § 3 (e) "The recovery of a judgment for an injury against one tortfeasor shall not of itself discharge the other tortfeasors from liability for the injury unless the judgment is satisfied. The satisfaction of the judgment shall not impair any right of contribution."

contravene.  In the case at bar there were not only succes-
sive torts which were not identical in their effects but there
was also no adjudication of the amount of damage and little,
if anything, to suggest that a claim for malpractice was in
mind when the consent judgment was entered and satisfied.
There appears no reason to support a rule of constructive
satisfaction in such a case.  It may be that the rule should
be the same for all cases of successive torts; in confining
the present holding to the facts of the case we intend no
suggestion.

Our holding therefore is that the satisfaction of the judg-
ment against the first tortfeasors did not bar this action.
It must be determined on another trial whether the amount
paid on that judgment was full satisfaction in fact of the
malpractice claim and if not what is the uncompensated
amount of that claim.  See *O'Neil* v. *National Oil Co.* 231
Mass. 20, 28–29 (covenant not to sue) ; *Shapiro* v. *Lyon,* 254
Mass. 110, 117; *Daniels* v. *Celeste,* 303 Mass. 148, 152; *Kar-
cher* v. *Burbank,* 303 Mass. 303, 306; *Brockton Sav. Bank* v.
*Shapiro,* 324 Mass. 678, 684 (contract action).

We think the sound rule is that the burden is on the plain-
tiff to establish what part of the payment received was not
on account of the malpractice claim.  *Couillard* v. *Charles
T. Miller Hosp. Inc.* 253 Minn. 418, 428.  *Derby* v. *Prewitt,*
12 N. Y. 2d 100, 106.  Prosser, Torts (2d ed.) § 46, p. 246.
Compare *Ash* v. *Mortensen,* 24 Cal. 2d 654, 660; *Daily* v.
*Somberg,* 28 N. J. 372, 385; *McKenna* v. *Austin,* 134 F. 2d
659, 664 (Ct. App. D. C.).

4.  We do not consider other exceptions which relate to
points not likely to arise on another trial.

*Exceptions  sustained.*