Rupert L. CANNON et ux., Petitioners,

v.

Dr. Harris F. PEARSON et al., Respondents.

No. A–10019.

Supreme Court of Texas.

Oct. 7, 1964.

Rehearing Denied Nov. 11, 1964.

Harris & Ball, Fred W. Davis, Arlington, for petitioners.

Hill & Paddock, Fort Worth, for respondents.

CALVERT, Chief Justice.

We granted writ of error in this case because from study of the opinion of the Court of Civil Appeals and the briefs of the parties we understood that the question for review was this: Under what circumstances, if any, may an injured person maintain a suit for damages against a doctor for malpractice after having released from liability the tort-feasor whose conduct made services of the doctor necessary? Our study of the record in the trial court now discloses that the question thus stated is not in the case.

Suit is by Rupert L. Cannon and wife, Pauline Cannon, plaintiffs, against Dr. Harris F. Pearson and Mid-Cities Memorial Hospital Corporation, defendants, for damages alleged to have been proximately caused by negligent acts and omissions in diagnosis and treatment of injuries to plaintiffs' deceased minor daughter, Mary Lee Cannon.

On motion of the defendants, the trial court rendered a summary judgment that the plaintiffs take nothing. The Court of Civil Appeals affirmed. 374 S.W.2d 453. We affirm.

Mary Lee Cannon was injured on August 3, 1962, when she was struck by a taxicab owned by A. M. Donnelly, doing business as Bell Cab Co., and operated at the time of the accident by O. W. Feemster. Immediately following the accident, Mary Lee was carried by ambulance to Mid-Cities Memorial Hospital where she was placed under the care of Dr. Pearson. On Sunday, August 5, after the child became unconscious, the parents had her moved to Arlington Memorial Hospital where she was examined by Dr. Kenneth Adams. Dr. Adams had her transferred on the same day to St. Joseph's Hospital in Fort Worth. She underwent surgery immediately upon arrival at St. Joseph's. She never regained consciousness and died on August 7.

The summary take-nothing judgment rendered by the trial court, and the Court of Civil Appeals' judgment of affirmance are based on a release executed by the plaintiffs by and under the terms of which, in consideration of the payment of the sum of $3,500.00, Donnelly and Feemster are released from all liability for damages growing out of the injuries to the plaintiffs' daughter. The release was pleaded as a bar to plaintiffs' suit.

Defendants asserted in their motion for summary judgment that the release of Donnelly and Feemster operated in law to release them; and that there were, therefore, no genuine issues of fact on the question of liability. A copy of the release was attached to the motion. The release was executed on August 10, 1962. By its terms, Donnelly and Feemster, their "heirs, administrators, executors, successors and assigns" are released and discharged "from any and all actions, causes of action, claims and demands of whatsoever kind or nature on account of any and all known and unknown injuries, losses and damages" growing out of the accident wherein their daughter was injured. The release further recites that acceptance of the sum of $3,500.00 is "in full accord and satisfaction of a disputed claim," and that the release is intended to cover and does cover "not only all now known injuries, losses and damages but any future injuries, losses and damages not now known or anticipated but which may later develop or be discovered, including all the effects and consequences thereof." Finally, the instrument recites that the sum of money is voluntarily accepted "for the purpose of making a full and final compromise, adjustment and settlement of all claims for injuries, losses and damages resulting or to result from said accident." Also attached to the motion for summary judgment was an affidavit executed by Mr. and Mrs. Cannon, dated August 10, 1962, in which they itemized medical, hospital, ambulance and funeral bills which they either had paid or for which they were liable.

It has long been an accepted and established rule in this State that one who wrongfully injures another is liable in damages for the consequences of negligent treatment by a doctor or surgeon selected by the injured person in good faith and with ordinary care. Houston & T. C. Ry. Co. v. Hollis, 2 Willson's Civil Cases Ct. App. § 218, p. 169; City of Dallas v. Meyers, Tex.Civ.App., 55 S.W. 742, no writ history; Galveston, H. & S. A. Ry. Co. v. Miller, Tex.Civ.App., 191 S.W. 374, writ refused; Hicks Rubber Co. v. Harper, Tex. Civ.App., 131 S.W.2d 749, writ dismissed, 134 Tex. 89, 132 S.W.2d 579. The rule is also generally recognized and accepted in other state jurisdictions. 15 Am.Jur. 494–497, Damages, §§ 84, 85 and 86; 8 A.L.R. 506; 39 A.L.R. 1268; 126 A.L.R. 912. Most state jurisdictions originally approved a concomitant rule that a release of the original tort-feasor operated in law to release the negligent doctor. See cases annotated in 40 A.L.R.2d 1075. This rule has been accepted as sound and applied in three cases in this State. Phillips v. Wright, Tex. Civ.App., 81 S.W.2d 129, writ dismissed; Borden v. Sneed, Tex.Civ.App., 291 S.W. 2d 485, writ refused, no reversible error; Sims v. Auringer, Tex.Civ.App., 301 S.W. 2d 286, writ refused, no reversible error. For an excellent review of Texas decisions relating to release of joint tort-feasors, in which the Phillips, Borden and Sims cases are noted, see 36 T.L.R. 55.

In recent years the highest courts of a number of the states have disavowed the latter rule and now hold that a release of the original tort-feasor will not operate to release the negligent doctor if the injured party did not intend that it do so; and they hold further that parol evidence is admissible to show intent. See Ash v. Mortensen, 24 Cal.2d 654, 150 P.2d 876; Derby v. Prewitt, 12 N.Y.2d 100, 236 N.Y.S.2d 953, 187 N.E.2d 556; Selby v. Kuhns, 345 Mass. 600, 188 N.E.2d 861; Couillard v. Charles T. Miller Hospital, Inc., 253 Minn. 418, 92 N.W.2d 96; Hansen v. Collett, Nev., 380 P.2d 301; Daily v. Somberg, 28 N.J. 372,

146 A.2d 676, 69 A.L.R.2d 1024. The modern tendency, as illustrated in the cited cases, is to treat the older rule as an illegitimate off-spring of the rule that release of one joint tort-feasor releases all, which rule is itself condemned by some of our ablest scholars on the theory that the courts have confused release of a party with satisfaction of a cause of action. See Prosser, 25 Cal.L.R. 413, 422; Prosser, Law of Torts, 3rd Ed., pp. 268–273, § 46; Harper and James, The Law of Torts, Vol. 1, pp. 709–714, § 10.1; Wigmore, 17 Ill.L.R. 563.

The courts adopting the "modern rule" differ as to the proper placing of the burden of going forward with evidence of intent. Some hold that a settlement of all claims against the tort-feasor raises a presumption of satisfaction of a claim for malpractice, and place the burden on the plaintiff to go forward with evidence that it was not so intended. See Derby v. Prewitt, 12 N.Y. 2d 100, 236 N.Y.S.2d 953, 187 N.E.2d 556, 560; Couillard v. Charles T. Miller Hospital, Inc., 253 Minn. 418, 92 N.W.2d 96, 103; Selby v. Kuhns, 345 Mass. 600, 188 N. E.2d 861, 866. Others holds that the burden is on the doctor to go forward with evidence that the parties to the release intended the settlement to satisfy the plaintiff's claim for malpractice. See Ash v. Mortensen, 24 Cal.2d 654, 150 P.2d 876, 879; Daily v. Somberg, 28 N.J. 372, 146 A.2d 676, 684, 69 A.L.R.2d 1024, 1033. We regard the holding in the cases first cited as the more logical. Since the cause of action against a tort-feasor includes the right to full satisfaction of damages proximately caused by a doctor's negligence, settlement with the tort-feasor should, at least presumptively, include satisfaction of the claim for damages for malpractice.

We return to the record in this case and accept the postulate that even if we should be disposed to disavow the rule applied in Phillips v. Wright; Borden v. Sneed and Sims v. Auringer, all supra, and to adopt the "modern rule," the release of Donnelly and Feemster raised a presump-

tion of satisfaction of the plaintiffs' claim for damages for malpractice and thus of intention to release Pearson and Hospital as well as the original tort-feasors. Under that approach to the problem, summary judgment in favor of the defendants was required unless the plaintiffs offered proof that the claim had not been satisfied by the settlement and that they did not intend to release the defendants.

The only summary judgment proof offered by the plaintiffs to avoid the effect of the release was an affidavit of Rupert L. Cannon. The affidavit states that on August 4, an insurance adjuster called on the affiant "and made offers of settlement of any claim I might have against Bell Cab Co. and O. W. Feemster," and that negotiations for settlement "of any claim against Bell Cab Co. and the driver, O. W. Feemster" were concluded on August 6 with acceptance of an offer of $3,500.00. The affidavit continues:

> "However, the settlement was made and agreed upon before the death of my daughter and before I had any knowledge of any malpractice on the part of either defendant and before most of the various acts of malpractice occurred. For that reason *the settlement made was a partial settlement only for the injuries received by Mary Lee Cannon and the settlement did not include damages for any wrongful death, because Mary Lee Cannon had not died at the time the settlement was concluded. This was intended by both of us as a partial release only for injuries. There was no discussion between myself and the adjuster about payment for wrongful death of Mary Lee Cannon. The same was not put in the release and same had not arisen at the time the actual settlement was concluded* orally by agreement between myself and the representative of the Cab Co. *Our final written agreement encompassed only our oral agreement* made before the death of Mary Lee Cannon *that the injuries portion of the claim was being settled by the agreement.*" [1]

In the presentation of their appeal in the Court of Civil Appeals and in this Court, plaintiffs treat their proof as raising a fact issue as to whether they intended their settlement to satisfy their claim against the defendants, and intended the release of Donnelly and Feemster to release Pearson and Hospital also. Can it fairly be said that a reasonable interpretation of Rupert L. Cannon's affidavit raises that issue? We think not.

The affidavit does state that the settlement with Donnelly and Feemster "was a partial settlement only," and that the release was intended "as a partial release only"; but the affiant makes the meaning of his use of those phrases quite clear. He states that the settlement was "a partial settlement only *for the injuries received*" and *"did not include damages for any wrongful death"*; that the release was intended "as a partial release *only for injuries*" because death had not occurred when the settlement negotiations were concluded, and there was no discussion "about payment for wrongful death"; that the final written agreement encompassed only the oral agreement "that *the injuries portion of the claim was being settled* by the agreement." These statements, even if admissible, cannot fairly or reasonably be interpreted as proof that the release was intended to release only Donnelly and Feemster, but not Pearson and Hospital. To the contrary, they are proof, if admissible, that the affiant intended to settle the claim for damages arising out of the minor daughter's injuries, but not the claim for damages under the wrongful death statute; and that the release was intended as a release from any claim for damages arising out of the injuries, but not as a release of any claim for damages under the wrongful death statute.

---

1. Emphasis ours unless otherwise indicated.

The pleadings of the plaintiffs confirm our interpretation of the affidavit. In their supplemental petition they alleged that the insurance adjuster obtained the release by representing to them that they were "entering into only partial release and with the understanding that only partial release was being entered into and that said release *was limited only to injuries and did not include a wrongful death claim.*" Paragraph III of plaintiffs' reply to the motion for summary judgment reads:

> "Plaintiff says that *the settlement entered into* between Plaintiff and Bell Cab Co. and O. W. Feemster was a partial settlement only and *is specifically confined only to injuries and is not a settlement for any wrongful death action*, and that same was intended as a partial settlement only. Further, that *said settlement was made orally and actually agreed to prior to the time the cause of wrongful death arose*, i. e., prior to the time of the death of the child in question."

The foregoing analysis of plaintiffs' pleadings and summary judgment proof compels the conclusion that the question stated at the beginning of this opinion is not in the case.

■ The question which is in the case on the record before us is this: May parties who have executed a release by the terms of which they have released their cause of action for wrongful death and their cause or causes of action for injuries causing the death, show by parol evidence that their cause of action for wrongful death was not satisfied by the settlement and that they did not intend to release that claim? We hold that they may not.

This case is unlike Landers v. B. F. Goodrich Co., Tex.Sup.; 369 S.W.2d 33, in which we recognized that a cause of action for injuries asserted under the survival statute, Art. 5525,[2] and a cause of action for wrongful death growing out of the injuries, asserted under the wrongful death statute, Art. 4671, are separate causes of action and may be enforced in separate suits. In that case the causes of action were owned by different persons, and we were concerned with a question of res judicata; here, both causes of action were united in the same persons, and we are concerned with the legal effect of the terms of a release.

One aspect of the instant suit should be emphasized. The plaintiffs do not allege or claim that the negligence of Dr. Pearson and Hospital was the sole proximate cause of their daughter's death; therefore, the question posed here must be answered just as though Donnelly and Feemster, the released tort-feasors, were defendants in the suit, and a right of recovery of damages for wrongful death were being asserted against them. Once the problem is thus brought into proper focus, a negative answer to the question is required by ordinary rules of contract law.

When the plaintiffs executed the release on August 10, all of their causes of action were accrued. They then had a cause of action for recovery of items of expense paid or incurred for treatment of their daughter's injuries. Gulf, C. & S. F. R. Co. v. Farmer, 102 Tex. 235, 115 S.W. 260, 261–262; City of Galveston v. Barbour, 62 Tex. 172, 174–175. As the child's only heirs under our laws of descent and distribution, they had a cause of action for damages for her conscious pain and suffering and for her funeral expenses. Gulf, C. & S. F. Ry. Co. v. Moore, 28 Tex.Civ. App. 603, 68 S.W. 559, 561, writ refused; Texas Co. v. Brown, Tex.Civ.App., 82 S.W.2d 1101, 1107, writ dismissed; Landers v. B. F. Goodrich Co., Tex.Sup., 369 S.W.2d 33, 35. As the only surviving beneficiaries under the wrongful death statute, they had a cause of action for damages for loss of the child's services dur-

2. All references to statutes are to Vernon's Annotated Texas Statutes.

ing her minority and loss of contributions to their support reasonably to be expected from her thereafter. Cantu v. Southern Pac. Ry. Co., Tex.Civ.App., 166 S.W.2d 963, 964, writ refused; Gulf, C. & S. F. Ry. Co. v. Compton, 75 Tex. 667, 13 S.W. 667, 669–670; St. Louis Southwestern Ry. Co. of Texas v. Shiflet, 98 Tex. 102, 81 S.W. 524; Gulf, C. & S. F. Ry. Co. v. Ballew, Tex.Com.App., 66 S.W.2d 659, 662.

■ Owning these accrued causes of action at the time, plaintiffs declared in their release that they understood the terms of the settlement, and that they voluntarily accepted the sum of $3,500.00 "for the purpose of making a full and final compromise, adjustment and settlement of all claims for injuries, losses and damages resulting or to result from said accident." By expressed provision they released Donnelly and Feemster "from any and all actions, causes of action, claims and demands of whatsoever kind or nature on account of any and all known and unknown injuries, losses and damages" growing out of the accident. Unless there is some legal basis for avoiding it, in whole or in part, the provision is just as effective to release the cause of action for wrongful death as it is to release the cause of action for injuries. Cf. Quebe v. Gulf, C. & S. F. Ry. Co., 98 Tex. 6, 81 S.W. 20, 66 L.R.A. 734.

■ No summary judgment proof was tendered by the plaintiffs which would authorize avoidance of the release for fraud, illegality or like reason. No effort is made to reform it because of mutual mistake and thus to preserve the cause of action for wrongful death. The plaintiffs seek to avoid its legal effect of releasing their cause of action for wrongful death by the tender of extrinsic evidence that it was not intended by the parties that it have that effect. The parol evidence rule bars the effort; and it matters not that the defendants who invoke the rule are not parties to the instrument. Davis v. George, 104 Tex. 106, 134 S.W. 326; Texas Law of Evidence, McCormick and Ray, vol. 2, p.

474, § 1621; Williston on Contracts, 3rd Ed., vol. 4, p. 1154, § 647; Corbin on Contracts, vol. 3, p. 572, § 596. There are Texas cases holding that the rule will be relaxed to permit proof that a release of one joint tort-feasor was not intended to release another. See Eckel v. First Nat. Bank of Fort Worth, Tex.Civ.App., 165 S.W.2d 776, 779, writ refused, and Pearce v. Hallum, Tex.Civ.App., 30 S.W.2d 399, 402, writ refused. Accord: Corbin, supra; 22 Ill.L.R. 274. That is not the question before us.

The judgment of the Court of Civil Appeals is affirmed.